**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

———————————————————x
                                                    :
In re:                                              :        CHAPTER 11
                                                    :
HERMITAGE INN REAL ESTATE                           :
HOLDING COMPANY, LLC,                               :        CASE NO.  19-20903 (JJT)
                                                    :
            Debtor.                                 :
———————————————————x
                                                    :
HERMITAGE INN REAL ESTATE                           :
HOLDING COMPANY, LLC                                :
                                                    :
            Movant,                                 :
                                                    :
v.                                                  :
                                                    :
15-HERMITAGE, LLC, A&W REALTY LLC,                  :
ALBERT SUBBLOIE, ANN COLEMAN,                       :
ATOMIC PROFESSIONAL AUDIO INC,                      :
AUSTIN DESIGN INC.,                                 :
BARNSTORMER SUMMIT LIFT, LLC,                       :
BERKSHIRE BANK,                                     :
BROWNS COUNTRY SERVICES LLC,                        :
BSA ARCHITECTS, INC.,                               :
BUILDERS SERVICES, INC.,                            :
CAROL H. BUTLER TRUST,                              :
CHARLES COLLINS & ANA CLADERA,                      :
COLDBROOK FIRE DISTRICT NO. 1,                      :
CRAIG DOERSCH PAINTING, LLC,                        :
DAN AND JOHN LANE                                   :
dba LANE PLUMBING & HEATING, INC.                   :
DAN MCLEOD,                                         :
DAN SOLAZ, DAVID MANNING INC,                       :
DELL FINANCIAL SERVICES LLC,                        :
DONALD JABRO,                                       :
FISHER AND FISHER LAW OFFICES,                      :
FRED H. HAMBLET, LLC,                               :
GORDON BRISTOL CONSULTING, LLC                      :
GREEN MOUNTAIN POWER CORP,                          :
GREENFIELD GLASS COMPANY,                           :
GRENOBLE GROUP,                                     :
HARRINGTON ENGINEERING INC.,                        :

INTERNATIONAL FINANCIAL SVCS CORP :
IRON HORSE STANDING SEAM          :
ROOFING CO,                       :
JOYCE LAND SURVEYING CORP,        :
KEY DRILLING & BLASTING SVCS,     :
LAKELAND BANK,                    :
LPV,                              :
MACROLEASE CORPORATION,           :
MANCHESTER CARPET CARE INC.,      :
MATTHEW CURTIS,                   :
METROPOLITAN GOLF ASSN,           :
MICHAEL FAYETTE                   :
dba MFAYETTE CARPENTRY, LLC,      :
MICHAEL FAYETTE STEPHEN KUNKLE    :
dba STEPHEN KUNKLE CARPENTRY,     :
MOUNTAIN GLASS AND LOCK CORP,     :
MR STEEL ACQUISITION CORP.,       :
NEC FINANCIAL SERVICES LLC,       :
NORDIC VALLEY PROPERTIES LLC,     :
NORTHERN BUILDING SUPPLIES, INC,  :
NS LEASING, LLC,                  :
OAKLEAF MARINE MANAGEMENT CORP,:
PIONEER TIMBER FRAMES LLC,        :
PJB HOME CENTER, INC.,            :
PLIMPTON EXCAVATING LLC,          :
RCN CAPITAL LLC,                  :
RCN CAPITAL LLC, ATIMA,           :
REINHART EQUIPMENT,               :
REINHART FOODSERVICE, LLC,        :
ROBERT FISHER,                    :
RTM CAPITAL PARTNERS, INC.,       :
SETH AND JENNIFER GOODMAN,        :
SHEFFIELD FINANCIAL,              :
SOUTHWORTH ELECTRICAL INC,        :
SPRUNG STRUCTURES,                :
SQUIRE CAPITAL, STEPHEN KUNKLE,   :
STEPHEN KUNKLE                    :
dba STEPHEN KUNKLE CARPENTRY,     :
SVT MASONRY INCORPORATED,         :
SWAN ELECTRIC, INC.,              :
SYSCO ALBANY, LLC,                :
TEREX FINANCIAL SERVICES, INC.,   :
TEREX FINANCIAL SERVICES, INC.,   :
TFT HOLDINGS, LLC,                :
THE INN AT SAWMILL FARM, LLC,     :
THOMAS WHIT & ELIZ ARMSTRONG,     :

TRINITY ENGINEERING &amp;                           :
TECHNICAL SERVICES, LLC,                        :
TRIPLE T TRUCKING,                              :
TRUE WORLD FOODS BOSTON, LLC,                    :
TYLER AND ROSE DICKSON,                          :
VARESCHI PLUMBING &amp; HEATING,                    :
VERMONT DEPARTMENT OF TAX,                       :
W&amp;W BUILDING SUPPLY,                            :
WALKER KIMBALL,                                 :
WESTERN EQUIPMENT FINANCE, INC,                 :
WINDHAM ARCHITECTURAL METALS,                   :
                                                :
            Respondents.                  :
_____x
_____x
                                                :
In re:                                          :    CHAPTER 11
                                                :
HERMITAGE CLUB, LLC                             :    CASE NO.  19-20904 (JJT)
                                                :
            Debtor.                       :
_____x
                                                :
HERMITAGE CLUB, LLC                             :
                                                :
            Movant,                       :
                                                :
v.                                              :
                                                :
BARNSTORMER SUMMIT LIFT, LLC,                   :
BERKSHIRE BANK,                                 :
CORPORATION SERVICE CO, AS REP,                 :
DELL FINANCIAL SERVICES, LLC,                   :
INTERNATIONAL FINANCIAL SVCS CORP               :
NEC FINANCIAL SERVICES LLC,                     :
REINHART FOODSERVICE, LLC,                      :
SYSCO ALBANY, LLC,                              :
TCF EQUIPMENT FINANCE,                          :
WEBBANK,                                        :
            Respondents.                  :
_____x

**DEBTORS' MOTION FOR ORDER (**I**) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105(a), 362 AND 364(c) and (d), (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS TO THE DIP LENDER PURSUANT TO 11 U.S.C. § 364(c),  AND (III) SCHEDULING A FINAL HEARING**

## PURSUANT TO BANKRUPTCY RULE 4001

Hermitage Inn Real Estate Holding Company LLC ("HIREHCO") and Hermitage Club LLC (the "Club", and together with HIREHCO, the "Debtors"), the debtors and debtors-in-possession herein, by and through their undersigned proposed counsel, submit this motion (the "Motion") for entry of an order substantially in the form submitted herewith (the "Interim DIP Order,") pursuant to sections 105(a), 361, 362, 363 and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et. seq.* (the "Bankruptcy Code"), (i) authorizing the Debtors to obtain secured postpetition financing from Restructured Opportunity Investors, Inc., or its assignee (the "DIP Lender" or "Lender"), consisting of a credit facility in the aggregate principal amount of up to $1,750,000 (the "DIP Financing" or the "DIP Facility") for the purpose of funding the Debtors' general operating needs and the administration of the Debtors' chapter 11 cases, in accordance with (a) a Debtor-in-Possession Credit Commitment Letter entered into as of May 9, 2019 (the "DIP Credit Commitment"), attached hereto as Exhibit A, between the Debtors and the DIP Lender and (b) the budget ("Budget") attached to the Interim DIP Order; (ii) authorizing the Debtors' entry into definitive loan documents evidencing the terms set forth in the DIP Credit Commitment, and performance of such other acts as may be necessary or appropriate in connection therewith; (iii) granting to the DIP Lender valid, fully perfected, and enforceable security interests and liens (collectively, the "DIP Liens") in and upon the DIP Collateral (as defined in the DIP Credit Agreement) pursuant to sections 364(c)(2) and 364(d)(1) of the Bankruptcy Code; (iv) granting an allowed superpriority administrative expense claim (the "DIP Superpriority Claim") to the DIP Lender pursuant to section 364(c)(1) of the Bankruptcy Code; and (v) scheduling a final hearing (the "Hearing") pursuant to Rules 4001(b)(2) and (c)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to consider entry of the Interim DIP Order, authorizing and approving the DIP Financing.

In support of this Motion, the Debtors rely upon the *Declaration of James Barnes in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith, and respectfully state as follows:

### Jurisdiction, Venue And Statutory Predicates

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. [1] This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      The statutory predicates for the relief requested herein are sections 105(a), 361, 362, 363 and 364 of the Bankruptcy Code, Bankruptcy Rules 4001, 6004 and 9014, and Rule 4001-3 of the Local Rules of the United States Bankruptcy Court for the District of Connecticut (the "Local Rules").

A.      **General Background**

3.      Simultaneously herewith, the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases") in the United States Bankruptcy Court for the District of Connecticut.

4.      The Debtors are managing their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the filing of this Motion, no request has been made for the appointment of a trustee or examiner and no statutory committee has been

---

[1] On May 22, 2019, an involuntary bankruptcy petition was filed against HIREHCO in the United States Bankruptcy Court, District of Vermont, Case No. 19-10214 by three petitioners.  The Debtors note that two of the petitioners, Dan Solaz and Lakeland Bank, are respondents to this Motion.  The Debtors recognize that under Bankruptcy Rule 1014(b), the Vermont Bankruptcy Court may determine the district or districts in which these cases will proceed.

appointed in the Chapter 11 Cases.

5.      The Debtors own and operate a four-season private members only ski and golf club located in Wilmington, Vermont ("Hermitage" or the "Resort").   HIREHCO was formed in 2007 to purchase the Hermitage Inn (the "Inn") in West Dover, Vermont.  In 2011, HIREHCO expanded its operations and purchased the nearby Haystack Mountain ski resort and an adjacent 18-hole Desmond Muirhead designed championship golf course.  The Club was organized at that time with the intent to develop the Resort into a private, members only facility with 450 private homes and condominiums to be built on site.

6.      Development of the project commenced and ski lifts were installed to link the Inn to the ski mountain.  Club membership interest were sold at an even pace to achieve the goal of 1,500 members and 450 residential properties on site.

7.      Within a couple of years, the Debtors' operations expanded to include the Snow Goose Inn, White House Inn, the Inn at Sawmill Farm, and a local airport property with an additional 450 acres for building lots and expansion of the existing runway.

8.      The purchase of the airport property proved to be troublesome for the Debtors.  The State of Vermont Department of Natural Resources took the position that the common ownership of the Resort and the airport property through HIREHCO provided grounds to re-evaluate permits already issued by the State.   The State of Vermont slowed the permitting process as it evaluated impact on the local area.  The sale of Club memberships decreased dramatically.  Because of the financial distress caused by the declining sale of Club memberships and the lingering permitting issue, it became necessary for HIREHCO to sell the airport property and additional acreage to maintain operations.

9.      The decline in membership sales and real estate sales resulted in, *inter alia*,  a

default in payment of sales and use taxes owed to the State of Vermont.  On April 1, 2018, the State of Vermont ordered the closure of the Resort due to the non-payment of taxes.  Subsequently, Berkshire Bank commenced a foreclosure action against the Debtors in the Vermont State Courts (the "Foreclosure Action").  By order of the court, a receiver (the "Receiver") was appointed in the Foreclosure Action to take possession of the HIREHCO assets.  The Receiver has maintained and preserved the property but has not sought to re-open or improve the facilities since its appointment. The Receiver retained approximately five employees to maintain the Resort.

10.    As a result of the Resort closure and the effect of the pending Foreclosure Action, it became necessary for the Debtors to file petitions for reorganization under Chapter 11 of the Bankruptcy Code.

11.    Additional information and greater detail on the history of the Resort and its operations may be found in the First Day Declaration of James Barnes, which is incorporated herein by reference.

**B.     Organizational Structure**

12.    HIREHCO is a Connecticut limited liability company.  James R. Barnes is the Manager and initial member of HIREHCO.  The Club is a Connecticut limited liability company wholly owned by HIREHCO.

**C.     The Debtors' Prepetition Capital Structure**

(i)     Prepetition Senior Credit Documents

13.    HIREHCO, as borrower, is a party to a construction loan agreement and related documents dated September 30, 2013 pursuant to which Berkshire Bank ("Berkshire" or the "Prepetition Senior Lender") extended a secured financing facility to HIREHCO in the original principal sum of $20,000,000, as evidenced by a certain Second Amended and Restated

Promissory Note in the original principal amount of $15,000,000 (the "Base Lodge Note"); as further evidenced by that certain Third Amended and Restated Promissory Note dated June 28, 2016 in the original principal amount of $1,000,000 (the "Bridge Loan Note") and as further evidenced by that certain Promissory Note dated as of July 18, 2017 in the original principal amount of $1,100,000 (the "Second Bridge Loan Note"), all as secured by a Construction Mortgage and Security Agreement dated September 30, 2013 (the "Construction Mortgage") and recorded in the Town of Wilmington and the Town of Dover Land Records on real property owned by HIREHCO and located in the Towns of Wilmington and Dover, as more specifically described on Schedule A attached hereto (the "Real Property"), as amended by Amendment of Mortgage dated April 30, 2014 and as further amended by Second Amendment of Mortgage dated November 12, 2014 and as further amended by Third Amendment of Mortgage dated December 3, 2014 and as further amended by Fourth Amendment of Mortgage dated December 4, 2015 and as further amended by Fifth Amendment of Mortgage dated June 28, 2016 and as further amended by Sixth Amendment of Mortgage dated February 1,2017 and as further amended by Sixth Amendment of Mortgage dated February 1, 2017 and as further amended by Seventh Amendment of Mortgage dated February 10, 2017 and as further amended by Eighth Amendment of Mortgage dated July 18, 2017. (The Base Lodge Note, the Bridge Loan Note, the Second Bridge Loan Note and together with the Construction Mortgage, as amended, the "Berkshire Loan Facility").

14.     A portion of the real property secured by the Berkshire Loan Facility is leased by HIREHCO from the Town of Wilmington and the Wilmington Water District. The Town of Wilmington and the Wilmington Water District, as Landlord under the ground lease entered into a certain  Ground Lease Consent and Recognition Agreement dated March 9, 2015 and recorded in the Wilmington Land Records consenting to the Berkshire Loan Facility.

15.     The Club and HIREHCO granted to Berkshire a security interest in all of their respective personal property ("Personal Property") to secure the indebtedness under the Berkshire Loan Facility by Security Agreements each dated September 30, 2013. In order to perfect the security interests, Berkshire filed UCC financing statements with the Connecticut Secretary of State (the "Security Interests").

16.     On December 3, 2014, HIREHCO, the Club and James R. Barnes entered into a Second Amended and Restated Construction Loan Agreement, as amended by First Amendment of Loan Agreement and Other Loan Documents dated June 28, 2016, Second Amendment of Loan Agreement and Other Loan Documents dated February 10, 2017, Third Amendment of Loan Agreement and other Loan Documents dated June 14, 2017 and Fourth Amendment of Loan Agreement and Other Loan Documents dated July 18, 2017 to secure the Berkshire Loan Facility.

17.     By Amended and Restated Payment and Completion Guaranty dated December 3, 2014, as amended, James R. Barnes executed a guaranty of the obligations of HIRECHO to Berkshire.

18.     Berkshire declared a default under the Berkshire Loan Facility and the parties entered a certain Forbearance Agreement dated December 30, 2016 as amended by Second Amendment to Forbearance Agreement dated July 18, 2017 and as further amended by Amended and Restated Forbearance Agreement dated November 30, 2017.

19.     As of the Petition Date, approximately $19 million remains outstanding under the Berkshire Loan Facility (together with any amounts incurred or accrued, but unpaid prior to the Petition Date, the "First Lien Obligations"). The Security Interests granted the Prepetition Senior Lender first-priority security interests in and liens on all of their respective personal and real property (collectively, the "Prepetition Collateral"), subject only to certain permitted

encumbrances (the "Permitted Liens").

20.  **Involuntary Liens and Encumbrances on the Real Property.**  There are a number of liens affecting the Real Property, which liens are subsequent and subordinate to the liens of the Prepetition Senior Lender.  The following entities may claim an interest in the Real Property (collectively, the "Prepetition Involuntary Liens"):

a.  BSA Architects, Inc. d/b/a Bull Stockwell Allen may claim an interest in the Real Property by virtue of a Mechanic's Lien dated June 24, 2016 in the amount of $338,717.81 and recorded on June 27, 2016 in the Town of Dover Land Records, and that certain Writ of Attachment and Order of Approval dated August 31, 2016 and recorded in the Town of Wilmington and Town of Dover Land Records and that certain Judgment order to Stipulation dated February 8, 2017 in the amount of $430,000 and recorded in the Wilmington Land Records and the Dover Land Records.

b.  MR Steel Acquisition Corp. d/b/a Ameri-Fab may claim an interest in the Real Property in the amount of $58,750.00 by virtue of a Notice of Mechanics Lien dated February 13, 2017 and recorded in the Wilmington Land Records.

c.  Thomas Whit Armstrong, Jr. and Elizabeth Armstrong may claim an interest in the Real Property by virtue of a Writ of Attachment and order of Approval dated April 20, 2017 in the amount of $227,186.36 and by Order dated October 23, 2017 in the amount of $198,242.12 recorded in the Wilmington Land Records.

d.  PJB Home Center, Inc. d/b/a Perkins Home Center may claim an interest in the Real Property by virtue of a Mechanics Lien dated May 10, 2017 in the amount of $4,093.35 recorded in the Wilmington Land Records  and a Notice of Mechanics Lien dated May 10, 2017 in the amount of $30,645.19 recorded in the Wilmington Land Records and a Contractor's Lien

dated May 8, 2017 in the amount of $7,556.11, recorded in the Dover Land Records.

        e.      Green Mountain Power Corporation may claim an interest in the Real Property by virtue of a Stipulated Writ of Attachment dated June 12, 2017 in the amount of $257,628.11 recorded in the Wilmington Land Records.

        f.      Michael Fayette d/b/a MFayette Carpentry, LLC may claim an interest in the Real Property by virtue of a Notice of Mechanics Lien in the amount of $18,844.00 recorded on July 6, 2017 in the Wilmington Land Records.

        g.      Stephen Kunkle d/b/a Stephen Kunkle Carpentry may claim an interest in the Real Property by virtue of a Notice of Mechanics Lien in the amount of $19,140 recorded on July 6, 2017 in the Wilmington Land Records.

        h.      Dan and John Lane d/b/a Lane Plumbing & Heating, Inc. may claim an interest in the Real Property by virtue of a Notice of Mechanics Lien dated July 6, 2017 in the amount of $68,504.33 recorded  in the Wilmington Land Records.

        i.      Southworth Electrical, Inc. may claim an interest in the Real Property by virtue of a Memorandum of Lien dated July 10, 2017 in the amount of $66,090.44 recorded in the Wilmington Land Records.

        j.      Swan Electric, Inc. may claim an interest in the Real Property by virtue of a Notice of Contractor's Lien dated July 10, 2017 in the amount of $62,510.60 recorded in the Wilmington Land Records.

        k.      SVT Masonry Incorporated may claim an interest in the Real Property by virtue of a Judgment in the amount of $103,719.21 recorded on May 30, 2018 in the Wilmington Land Records and relating to a Notice of Lien dated July 14, 2017 in the amount of $89,950 recorded in the Wilmington Land Records.

l.      Seth Goodman and Jennifer Goodman may claim an interest in the Real Property by virtue of a Writ of Attachment dated July 21, 2017 in the amount of $986,495.21 recorded in the Wilmington Land Records.

m.      Craig Doersch Painting, LLC may claim an interest in the Real Property by virtue of a Notice of Lien dated August 2, 2017 in the amount of $76,834.00 recorded in the Wilmington Land Records.

n.      Mountain Glass & Lock Corporation may claim an interest in the Real Property by virtue of a Notice of Claim of Lien dated August 11, 2017 in the amount of $44,872.50 and by Stipulated Writ of Attachment dated November 8, 2017 in the amount of $54,057.02 recorded in the Wilmington land Records.

o.      Vareschi Plumbing & Heating may claim an interest in the Real Property by virtue of  a Notice of Lien dated August 17, 2017 in the amount of $15,220.00 recorded in the Wilmington Land Records.

p.      Manchester Carpet Care, Inc. may claim an interest in the Real Property by virtue of a Notice of Lien dated August 9, 2017 in the amount of $39,875.09 recorded in the Wilmington Land Records.

q.      Windham Architectural Metals may claim an interest in the Real Property by virtue of a Notice of Lien dated October 4, 2017 in the amount of $16,209.16 recorded in the Wilmington Land Records.

r.      Sysco Albany, LLC may claim an interest in the Real Property by virtue of a Judgment Order dated August 31, 2017 in the amount of $23,541.61 recorded in the Wilmington Land Records.

s.      Greenfield Glass Company may claim an interest in the Real Property by

virtue of a Notice of Lien dated October 24, 2017 in the amount of $4,928.88 recorded in the Wilmington Land Records.

t.      Austin Design Inc. may claim an interest in the Real Property by virtue of a Notice of Lien dated October 24, 2017 in the amount of $20,501.25 recorded in the Wilmington Land Records.

u.      Iron Horse Standing Seam Roofing Co. a/k/a Iron Horse Roofing Co. may claim an interest in the Real Property by virtue of a Preliminary Lien Notice dated November 27, 2017 in the amount of $25,631.11 recorded in the Wilmington Land Records.

v.      Reinhart FoodService, LLC may claim an interest in the Real Property by virtue of a Writ of Attachment dated November 27, 2017 in the amount of $1,587,448.10 recorded in the Wilmington and Dover Land Records.

w.      Reinhart FoodService LLC may further claim an interest in the Real Property by virtue of a Writ of Attachment dated January 25, 2018 in the amount of $1,587,448.10 recorded in the Wilmington and Dover Land Records.

x.      Gordon Bristol d/b/a Gordon Bristol Consulting, LLC may claim an interest in the Real Property by virtue of a Notice of Lien dated December 18, 2017 in the amount of $57,080.58 recorded in the Wilmington Land Records.

y.      Michael Fayette and Stephen Kunkle d/b/a Stephen Kunkle Carpentry may claim  an interest in the Real Property by virtue of a Writ of Attachment and Order of Approval dated January 2, 2018 in the amount of $30,959.55 recorded in the Wilmington Land Records.

z.      Pioneer Timber Frames LLC may claim an interest in the Real Property by virtue of a Notice of Lien dated January 5, 2018 in the amount of $16,520.00 recorded in the Wilmington Land Records.

aa.     Trinity Engineering & Technical Services, LLC may claim an interest in the Real Property by virtue of a Notice of Mechanics Lien dated January 16, 2018 in the amount of $13,557.75 recorded in the Wilmington and Dover Land Records.

bb.     Trinity Engineering & Technical Services, LLC may further claim an interest in the Real Property by virtue of a Notice of Mechanic's Lien dated January 16, 2018 in the amount of $9,743.65 recorded in the Dover Land Records.

cc.     Metropolitan Golf Association may claim an interest in the Real Property by virtue of a Judgement Order dated October 30, 2017 and certified on January 16, 2018 in the amount of $50,358.84 recorded in the Wilmington Land Records.

dd.     Pamela Keefe, Trustee of the Carol H. Butler Trust may claim an interest in the Real Property by virtue of a Writ of Attachment dated January 30, 2018 in the amount of $1,092,993.16 recorded in the Wilmington Land Records.

ee.     Fred H. Hamblet, LLC may claim an interest in the Real Property by virtue of a Notice of Lien dated April 13, 2017 in the amount of $21,990.00 recorded in the Dover Land Records.

ff.     Joyce Land Surveying Corp. may claim an interest in the Real Property by virtue of a Notice of Contractors Lien dated February 5, 2018 in the amount of $7,374.98 recorded in the Wilmington and Dover Land Records.

gg.     Tyler Dickson and Rose Stewart Dickson may claim an interest in the Real Property by virtue of a Writ of Attachment dated February 9, 2018 in the amount of $1,005,000.00 recorded in the Wilmington Land Records.

hh.     Brown's Country Services, LLC may claim an interest in the Real Property by virtue of a Notice of Lien in the amount of $150,382.86 recorded on February 21, 2018 in the

Wilmington Land Records.

      ii.    Dan Solaz may claim an interest in the Real Property by virtue of a  Writ and Order in the amount of $314,000.00 recorded on February 26, 2018 in the Wilmington Land Records.

      jj.    Plimpton Excavating, LLC may claim an interest in the Real Property by virtue of an Order in the amount of $37,102.84 recorded on August 9, 2018 in the Wilmington Land Records relating to a  Mechanic's Lien  recorded on March 7, 2018 in the Wilmington Land Records.

      kk.    Key Drilling & Blasting Services, Inc. may claim an interest in the Real Property by virtue of a Mechanic's lien in the amount of $66,600.00 recorded on March 7, 2018 in the Wilmington Land Records.

      ll.    Builders Services, Inc. may claim an interest in the Real Property by virtue of an interest recorded on March 12, 2018 at Book 347, Page 247 of the Dover Land Records.

      mm.    Harrington Engineering, Inc. may claim an interest in the Real Property by virtue of an interest  in the amount of $39,953.59 recorded on March 12, 2018  at Book 339, Page 159 of the Wilmington Land Records and recorded on March 9, 2018 at Book 11, Page 404 of  the Dover Land Records.

      nn.    Ann Coleman may claim an interest in the Real Property by virtue of a lien in the amount of $1,670.44 recorded on March 12, 2018 in the Wilmington Land Records.

      oo.    Northern Building Supplies, Inc. may claim an interest in the Real Property by virtue of an Order in the amount of $151,744.44 recorded on July 2, 2018 in the Wilmington Land Records and relating to a Mechanic's Lien in the amount of $121,999.13 recorded on March 13, 2018 in the Wilmington Land Records and  recorded on March 6, 2018 in the Dover Land

Records.

pp.    Triple T Trucking may claim an interest in the Real Property by virtue of a Mechanic's Lien in the amount of $34,634.31 recorded on March 20, 2018 in the Wilmington and Dover Land Records.

qq.    Triple T Trucking may claim a further interest in the Real Property by virtue of a Mechanic's Lien in the amount of $1,981.50 recorded on March 20, 2018 in the Wilmington Land Records.

rr.    Dan Solaz may claim a further interest in the Real Property by virtue of a Writ in the amount of $314,000 recorded on April 2, 2018 relating to a Mechanic's Lien recorded on March 21, 2018 in the Wilmington Land Records.

ss.    Charles T. Collins and Ana Cladera may claim an interest in the Real Property by virtue of a Judgment in the amount of $1,107,192.00 recorded on June 29, 2018 in the Wilmington Land Records relating to a Writ recorded on March 21, 2018 in the Wilmington Land Records.

tt.    David Manning, Inc. may claim an interest in the Real Property by virtue of an Order in the amount of $34,805.97 recorded on August 29, 2018 in the Wilmington Land Records relating to a Mechanic's Lien recorded on April 6, 2018 in the Wilmington Land Records.

uu.    TFT Holdings, LLC may claim an interest in the Real Property by virtue of a Judgment in the amount of $1,458,249.00 recorded on June 29, 2018 in the Wilmington Land Records relating to a Writ recorded on April 9, 2018 in the Wilmington Land Records.

vv.    Cold Brook Fire District may claim an interest in the Real Property by virtue of a lien in the amount of $255.42 recorded on May 10, 2018 in the Wilmington Land Records.

ww.    Atomic Professional Audio, Inc. may claim an interest in the Real Property

by virtue of a Judgment in the amount of $71,372.96 recorded on June 21, 2018 in the Wilmington Land Records.

xx.    True World Foods Boston LLC may claim an interest in the Real Property by virtue of an Order in the amount of $10,790.58 recorded on August 9, 2018 in the Wilmington Land Records.

yy.    Cold Brook Fire District may claim a further interest in the Real Property by virtue of a lien in the amount of $6,250.00 recorded on August 15, 2018 in the Wilmington Land Records.

21.    **Tax Liens on the Real Property.** The State of Vermont Department of Taxes may claim an interest in the Real Property by virtue of (i) a State Tax Lien dated July 25, 2017 in the amount of $185,239.07 and recorded in the Wilmington Land Records; (ii) a State Tax Lien dated September 7, 2017 in the amount of $114,450.24 and recorded in the Wilmington Land Records; (iii) a State Tax Lien dated September 13, 2017 in the amount of $299,151.87 and recorded in the Wilmington Land Records; (iv) a State Tax Lien dated August 10, 2017 in the amount of $185,897.61 and recorded in the Wilmington Land Records; and (v) a State Tax Lien dated October 20, 2017 in the amount of $4,396.90 and recorded in the Wilmington Land Records (collectively, the "Tax Liens").

22.    **Mortgages Affecting the Real Property**. In addition to the mortgage held by Berkshire Bank, the following entities hold mortgages secured by the Real Property (collectively, the "Prepetition Subordinate Mortgages"):

a.    Donald and Savannah Jabro may claim an interest in the Real Property by virtue of a mortgage securing the original principal amount of $450,000.00 which mortgage was recorded on May 1, 2017 in the Wilmington Land Records.

b.      Fisher & Fisher Law Offices may claim an interest in the Real Property by virtue of a mortgage securing the original principal amount of $143,727.72 which mortgage was recorded on November 17, 2017 in the Wilmington Land Records.

c.      RTM Capital Partners, Inc., LPV, 15-Hermitage, LLC and Matthew Curtis may claim an interest in the Real Property by virtue of a mortgage deed securing the original principal amount of $2,080,527.77, which mortgage was recorded on December 20, 2017 in the Wilmington Land Records.

23.      In addition to the liens affecting the Real Property, there are liens affecting the Personal Property assets of the Debtors.  The following entities may claim an interest in the Debtors' Personal Property (collectively, the "Personal Property Liens"):

a.      Barnstormer Summit Lift, LLC may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement No. 0003128812 recorded with the Connecticut Secretary of State and Original Financing Statement No. 16-300965 recorded with the Vermont Secretary of State;

b.      Berkshire Bank may claim an interest in the Personal Property owned by the Debtors by virtue of Original Financing Statement Nos. 0002961631 and 0002993655 recorded with the Connecticut Secretary of State;

c.      Corporation Service Company, as Representative may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement No. 0003016672 recorded with the Connecticut Secretary of State;

d.      Dell Financial Services, LLC may claim an interest in the Personal Property owned by the Club virtue of Original Financing Statement No. 0002956221 recorded with the Connecticut Secretary of State;

e.      International Financial Services Corporation may claim an interest in the Personal Property owned by the Debtors by virtue of Original Financing Statement No. 0003021288 recorded with the Connecticut Secretary of State and Original Financing Statement No. 14-274506 recorded with the Vermont Secretary of State;

f.      Lakeland Bank may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement No. 0003103361 recorded with the Connecticut Secretary of State;

g.      Macrolease Corporation may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement No. 0003021633 recorded with the Connecticut Secretary of State;

h.      NEC Financial Services, LLC may claim an interest in the Personal Property owned by the Club by virtue of Original Financing Statement Nos. 0003057636, 0003059810, 0003093807, and 0003095460 recorded with the Connecticut Secretary of State;

i.      Nordic Valley Properties, LLC may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement No. 14-277361 recorded with the Vermont Secretary of State;

j.      NS Leasing, LLC may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement Nos. 16-301105 and 17-309506 recorded with the Vermont Secretary of State;

k.      RCN Capital, LLC, ATIMA may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement No. 0003026452 recorded with the Connecticut Secretary of State and Original Financing Statement No. 14-275621 recorded with the Vermont Secretary of State;

l.    Reinhart Foodservice, LLC may claim an interest in the Personal Property owned by the Debtors by virtue of Original Financing Statement No. 0003214434 recorded with the Connecticut Secretary of State and Writ of Attachment 17-325079 recorded with the Vermont Secretary of State;

m.    Sysco Albany, LLC may claim an interest in the Personal Property owned by the Club by virtue of Original Financing Statement No. 0003176847 recorded with the Connecticut Secretary of State;

n.    TCF Equipment Finance division  of TCF National Bank may claim an interest in the Personal Property owned by the Club by virtue of Original Financing Statement Nos. 0003060165 and 0003122563 recorded with the Connecticut Secretary of State;

o.    Terex Financial Services, Inc. may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement No. 0003161474 recorded with the Connecticut Secretary of State and Original Financing Statement No. 17-310389 recorded with the Vermont Secretary of State;

p.    The Inn at Sawmill Farm, LLC may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement Nos. 15-278506 and 15-278507 recorded with the Vermont Secretary of State;

q.    Webbank may claim an interest in the Personal Property owned by the Club by virtue of Original Financing Statement No. 0003019760 recorded with the Connecticut Secretary of State; and

r.    Western Equipment Finance, Inc. may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement No. 0003159592 recorded with the Connecticut Secretary of State.

24.     The Prepetition Involuntary Liens, the Prepetition Subordinated Mortgages, and the Personal Property Liens shall be hereinafter referred to as the "Prepetition Subordinated Obligations".

25.     As of the Petition Date, the Debtors have aggregate unsecured debts (excluding claims by members of the Resort) totaling approximately $4.5 million, for merchandise, utilities, professional fees, insurance, and employee-related expenses.

## Need For Postpetition Financing

26.      The Debtors intend to use the Chapter 11 Cases to restructure their debt obligations and propose a feasible plan of reorganization. The Debtors will be irreparably harmed if they are not granted the authority to obtain postpetition financing from the DIP Lender in accordance with the terms of the DIP Credit Agreement. The relief sought herein is necessary in order to permit, among other things, the ability to fund payroll and payroll taxes as well as the ability to provide maintenance to the Resort, insurance and other ongoing necessary chapter 11 expenses including professional fees and United States Trustee Fees. The access of the Debtors to sufficient liquidity made available through the incurrence of new indebtedness for borrowed money is vital to the preservation and maintenance of the going concern value of the Debtors and to a successful reorganization of the Debtors.

27.     Absent the additional funds provided by the DIP Financing, the Debtors project that they will not have sufficient cash to maintain the Resort and its assets.  It is critical that the Debtors have sufficient funding to meet their ordinary course and bankruptcy-related obligations in order to effectuate an orderly reorganization. The Debtors believe that the DIP Financing, will enable them to meet their obligations in these Chapter 11 Cases.

28.     Given the Debtors' existing capital structure and financial condition, the Debtors

were unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without granting the DIP Lender, subject to the carve out and professional fee escrow, the DIP Liens and the DIP superpriority administrative expense claim under the terms and conditions set forth in the DIP Credit Agreement.

29.     After good faith arm's length negotiations with respect to the terms and conditions of the DIP Financing, and after soliciting proposals from other potential DIP lenders, including Berkshire, the Debtors concluded, in an exercise of their sound business judgment, that the financing to be provided by the DIP Lender pursuant to the terms of the DIP Credit Agreement and the Interim DIP Order clearly represents the most favorable terms and adequate source of financing presently available to the Debtors.

30.     The Debtors sought and received proposals for alternative financing. In the weeks prior to the Petition Date, the Debtors solicited a financing proposal from Berkshire, among others. Berkshire has reported that it is not interested in providing post-petition financing to the Debtors. The DIP Financing is the only option available to the Debtors at this critical time.  As outlined in more detail below, the DIP Financing (a) provides for up to $1,750,000 of financing, $1,000,000 of which is required on an interim basis, (b) has a maturity date that is the earlier of  six months from approval or entry of a final order confirming a plan of reorganization , (c) is not secured by any avoidance actions, and (d)  contains reasonable covenants and conditions.

31.     The Debtors submit that the terms of the proposed DIP Financing are fair, reasonable and balanced, reflect the Debtors' exercise of sound business judgment consistent with their fiduciary duties, are the best available under the circumstances, supported by reasonably

equivalent value and fair consideration, and should be approved on an interim and final basis.

<u>**Summary of Dip Financing Terms**</u>

32.    In accordance with the disclosure requirements of Bankruptcy Rule 4001(c), a

summary of the material terms of the DIP Credit Agreement, are set forth in the chart below.[2]

| | |
|---|---|
| *Borrowers* | Hermitage Inn Real Estate Holding Company LLC and Hermitage Club LLC |
| *Lender* | Restructured Opportunity Investors, Inc.<br>or its assignee (the "Lender") |
| *Commitment, Availability and Purpose* | The DIP Financing shall be a secured credit facility of up to $1,750,000 for which the DIP Lender will receive protection under Sections 364(c) and 364(d) of the Bankruptcy Code. |
| *Term, Maturity and Benchmarks* | The maturity date (the "Maturity Date") of the DIP Financing is as follows:<br>    the earlier of (i) six months from entry of order approving DIP or (ii) final order confirming Debtors' plan of reorganization.<br><br>The benchmarks are:<br><br>a.  Hiring Jonathan Joslow, or such other professional acceptable to Lender, as Chief Restructuring Officer with motion, if necessary, to be filed within 10 days of Petition Date and hearing thereon within 30 days of Petition Date;<br>b.  Meeting of Resort members within forty-five (45) days of the Petition Date with the result being that at least sixty-five percent (65%) of existing members commence paying one hundred percent (100%) of their monthly dues within sixty days of the Petition Date;<br>c.  Payment of monthly interest from Interest Reserve to commence within ninety (90) days of the Petition Date; and<br>d.  Filing of a confirmable plan of reorganization within one hundred twenty (120) days of the Petition Date and confirmation of a plan of reorganization within sixty (60) days thereafter. |

---

[2] The descriptions of the material terms of the proposed DIP Financing provided in this Motion are intended only as a summary thereof. In the event of any inconsistency between the descriptions set forth herein and the terms of the DIP Credit Commitment, the terms of the DIP Credit Commitment and Final DIP Order shall govern. All capitalized terms used but not otherwise defined in this summary chart shall have the meanings ascribed to them in the DIP Credit Commitment.

| | |
|---|---|
| *Interest Rate, Payments, Fees and Expenses* | **Interest Rate**: Prime + 5.5% per annum<br><br>**Default Rate**: In the event of a default by the Debtors as specified in the DIP Credit Agreement, the interest rate charged will be the lesser of (i) 18% per annum or (ii) maximum rate permitted by law.  At closing, Lender shall advance $280,000 from the DIP Facility to fund an Interest Reserve.  Interest payments will be drawn from the Interest Reserve monthly in arrears. |
| *Carve Out and Professional Fee Escrow* | Superpriority administrative expense claim granted to Lender shall be subject to carve out for the payment of all unpaid fees payable to the U.S. Trustee under 28 U.S.C. § 1930.  In addition, Lender shall consent to the funding of a professional fee escrow of no less than $300,000 ($100,000 on an interim basis) to be used for the payment of approved professional fees and expenses for professionals retained on behalf of the Debtors and any official committee of unsecured creditors appointed in these cases. |
| *Valid Liens* | **DIP Liens**. The senior first priority DIP Liens granted to the DIP Lender pursuant  to the DIP Order and the DIP Facility are deemed valid and perfected upon the entry of the Final DIP Order. The Lender shall have an allowed superpriority administrative expense claim pursuant to Section 364(c)(1) of the Bankruptcy Code. |

## Relief Requested

33.      By this Motion, the Debtors seek entry of the DIP Order granting the following relief: (i) authorizing and approving the Debtors' entry into the DIP Credit Agreement and performance of such other acts as may be necessary or appropriate in connection therewith, to obtain up to $1,750,000 of secured postpetition loans and advances pursuant to the DIP Order; (ii) granting to the DIP Lender the DIP Liens in and upon the DIP Collateral pursuant to sections 364(c)(2) and 364(d)(1) of the Bankruptcy Code; (iii) granting an allowed DIP Superpriority Claim to the DIP Lender pursuant to section 364(c)(1) of the Bankruptcy Code; and (iv) vacating and modifying the automatic stay to the extent necessary to effectuate the terms and provisions of the DIP Credit Agreement.

## Basis For Relief

34.      The Debtors do not have sufficient cash or other assets to operate their business

during these Chapter 11 Cases or to effectuate a reorganization. The Debtors will be irreparably harmed if they are not granted the authority to obtain postpetition financing from the DIP Lender in accordance with the terms of the DIP Credit Agreement in order to permit, among other things, the orderly maintenance of its business, the ability to fund payroll and payroll taxes, as well as the ability to provide critical Resort maintenance, insurance and other necessary chapter 11 expenses. The access of the Debtors to sufficient liquidity made available through the incurrence of new indebtedness for borrowed money is vital to the preservation and maintenance of the going concern value of the Debtors and to a successful reorganization of the Debtors.

35.     In the absence of sufficient funds to support the Debtors' ongoing operations, the value of the Debtors' assets and operations will dissipate, jeopardizing their ability to maximize value to the detriment of the Debtors' estates, creditors and all parties in interest.

36.     Thus, the DIP Financing is in the best interests of the Debtors' estates, creditors and all other stakeholders and, therefore, should be approved by this Court.

**I.     The Proposed DIP Financing Should be Approved Pursuant to Sections 364(c) 364(d) of the Bankruptcy Code**

37.     Section 364(c) of the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, the Court may authorize the debtor to obtain credit or incur debt (a) with priority over any and all administrative expenses specified in section 503(b) or 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the estate that is not otherwise subject to a lien, or (c) secured by a junior lien on property of the estate that is subject to a lien. 11 U.S.C. § 364(c). The Debtors propose to obtain the DIP Financing by providing the DIP Lender, *inter alia*, the DIP Liens and the DIP Superpriority Claims pursuant to sections 364(c)(1)–(2) and 364(d)(1) of the Bankruptcy Code.

38.     In seeking to obtain post-petition financing under section 364(c) of the Bankruptcy Code, the Debtors have the burden of demonstrating that:

    i.       They are unable to obtain unsecured credit pursuant to 11 U.S.C. § 364(b), *i.e.*, by allowing a lender only an administrative expense claim pursuant to 11 U.S.C. § 503(b)(1)(A);

    ii.      The credit transaction is necessary to preserve the assets of the estate; and

    iii.     The terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender.

*In re Los Angeles Dodgers, LLC*, 457 Bankr. 308, 312-13 (Bkrtcy. D. Del. 2011). *See also In re Ames Dept. Stores, 115* Bankr. *34 (*Bkrtcy S.D.N.Y. 1990*).* Further, section 364(d) of the Bankruptcy Code provides that the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior lien on property of the estate only if the debtor is unable to obtain such credit otherwise and there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted. 11 U.S.C. § 364(d).  The Debtors submit that the interests of Berkshire, the State of Vermont Department of Taxes, and the Prepetition Subordinated Obligations are adequately protected by the value of the Debtors' Real Property and Personal Property and the continued maintenance of these assets that will be facilitated by the  DIP Financing. Absent the DIP Financing the Debtors will not have adequate funds to maintain its Real Property and Personal Property thereby diminishing the value of these assets.

39.     For the reasons set forth herein, the Debtors submit that they have satisfied the standards required to access postpetition financing under section 364(c) and 364(d) of the Bankruptcy Code.

## A.     The Debtors were Unable to Obtain DIP Financing on More Favorable Terms

40.     The Court may not approve a credit transaction under section 364(c) unless the debtor demonstrates that it has attempted, but failed, to obtain unsecured credit under section 364(a) or (b). *In re Photo Promotion Associates, Inc., 89* Bankr. 328, 332 (S.D.N.Y. 1988*); In re Ames Dep't Stores, Inc.*, 115 Bankr. 34, 37 (Bkrtcy. S.D.N.Y. 1990). To satisfy the requirements of section 364(c) of the Bankruptcy Code, a debtor need only demonstrate "by a good faith effort that credit was not available" to the debtor on an unsecured or administrative expense basis. *In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986). The statute does not impose a duty to seek credit from "every possible lender before concluding that such credit is unavailable." *See In re Reading Tube Indus.*, 72 Bankr.. 329, 332 (Bkrtcy. E.D. Pa. 1987) (citing *In re Snowshoe Co*., 789 F.2d at 1088).

41.     The  Debtors have been unable to procure any financing in the form of unsecured credit allowable as an administrative expense claim under section 503(b)(1) of the Bankruptcy Code. The Debtors face severe liquidity constraints, and were forced to file these Chapter 11 Cases in order to preserve the value of their assets for the benefit of their creditors, and other parties in interest.

42.     As explained above, the Debtors sought proposals for alternative financing. The DIP Financing, provides for the funds  required by the Debtors to fund the Debtors' Chapter 11 expenses, allows for maintenance work that is critical for the winter season, contains a six  month term, and is otherwise fair, reasonable and balanced.

43.     Unless the Debtors are able to immediately access postpetition financing on a secured basis through the DIP Financing, the Debtors will not be able to pay employees, insurance, maintenance costs, and other necessary and critical expenses necessary to maintain and maximize the value of the Debtors' assets. Indeed, absent the DIP Financing, the Debtors would not be afforded the opportunity to reorganize under Chapter 11 which would irretrievably damage the value of the Debtors' assets. By contrast, approval of the DIP Financing will allow the Debtors to maintain the Resort property and allow the Debtors sufficient time to maintain and maximize the value of their assets, instill confidence in the Resort members and permit the Debtors the opportunity to proceed expeditiously to confirmation of a feasible chapter 11 plan within an aggressive timetable.

44.     As it stands, the DIP Lender has provided the Debtors with the most favorable and flexible post-petition financing terms that the Debtors have been able to procure. The Debtors submit that their efforts to obtain sufficient postpetition financing on the most favorable terms available satisfies the standard required under section 364(c) and 364(d) of the Bankruptcy Code.

**B.     The DIP Financing is Necessary to Preserve the Debtors' Assets and Going Concern Value**

45.     As debtors-in-possession, the Debtors have a fiduciary duty to protect and maximize their estates' assets. *See Wolf v. Weinstein* 372 U.S. 633, 649, 83 S. Ct 969 (1963); *In re Battinelli*, 169 Bankr. 522 (Bkrtcy. E.D.N.Y. 1994) *In re Mushroom Transp. Co.,* 382 F.3d 325, 339 (3d Cir. 2004). As noted above, without the DIP Financing, there is a significant risk that the Debtors would be forced to liquidate their assets. *In re Ames Dept. Stores*, 115 Bankr.. at 38 (with respect to postpetition credit, courts "permit debtors-in-possession to exercise their basic business judgment consistent with their fiduciary duties").

46.     As explained herein, the Debtors require access to funds in the form of postpetition financing to enable it to maintain the Resort , meet their chapter 11-related obligations, and reorganize their estates. Accordingly, the DIP Financing is necessary to preserve the Debtors' assets and the going concern value of the Company.

## C.     The Terms of the DIP Financing are Fair, Reasonable, and Appropriate Under the Circumstances

47.     The DIP Financing was negotiated in good faith and at arm's length between the Debtors and the DIP Lender, resulting in an agreement designed to permit the Debtors to continue to operate, satisfy all of their post-petition obligations, and maximize the value of their assets through an orderly sale process. *See, e.g., In re Snowshoe Co.,* 789 F.2d at 1088 (stating that section 364 of the Bankruptcy Code imposes no duty to seek credit from every possible lender, particularly when "time is of the essence to preserve a vulnerable seasonal enterprise"); *In re Western Pacific Airlines, Inc*., 223 Bankr. 567, 573 (Bnkrtcy. D. Colo. 1997) (authorizing postpetition financing to preserve value of aircraft leaseholds where to hold otherwise would result in the elimination of value and the "immediate collapse of the Debtor as a going concern").

48.     Accordingly, and as set forth in more detail herein, the Debtors submit that the terms and conditions of the proposed DIP Financing are fair, reasonable and appropriate under the circumstances.

## D.     Entry Into the DIP Credit Agreement Constitutes a Sound Exercise of the Debtors' Business Judgment

49.     Provided that an agreement to obtain secured credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code, courts grant a debtor considerable deference in acting in accordance with its sound business judgment in obtaining such credit. *See,*

*e.g., In re Trans World Airlines, Inc.,* 163 Bankr. 964, 974 (Bkrtcy. D. Del. 1994) (approving postpetition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment."); *Ames Dep't Stores*, 115 B.R. at 40 ("[c]ases consistently reflect that the court's discretion under section 364 [of the Bankruptcy Code] is to be utilized on grounds that permit [a debtor's] reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.");

50.     Bankruptcy courts consistently defer to a debtor's business judgment onbusiness operations g decisions, including a debtor's decision to borrow money. *See, e.g., In re AMR Corp.*, 485 Bankr.. 279, 287 (Bkrtcy. S.D.N.Y. 2013) ("[i]n determining whether to approve a debtor's request under Section 364, a Court must examine whether the relief requested is an appropriate exercise of the debtor's business judgment); "M]ore exacting scrutiny [of the debtors' business decisions] would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

51.     The Debtors believe that the proposed terms of the DIP Financing as set forth in the DIP Credit  Commitment are the best available to the Debtors and are reasonable under the circumstances. The Debtors further believe that entry into the DIP Financing represents a sound exercise of the Debtors' business judgment because the funds provided by the DIP Financing are essential to enable the Debtors to reorganize their estates, and satisfy all of their chapter 11-related obligations. The Debtors respectfully submit that because the circumstances of these Chapter 11 Cases require the Debtors to obtain financing under section 364(c) and 364(d) of the Bankruptcy

Code, their entry into the DIP Credit Facility, and approval of the DIP Financing reflects a sound exercise of their sound business judgment and is in the best interests of the Debtors' estates as a whole when compared with the alternatives.

52.     The collateral securing the Prepetition Obligations to Berkshire, the Tax Liens, and the Prepetition Subordinated Obligations was recently appraised by the Debtors at $50 million, and by Berkshire's valuation professional at approximately $53 million, in the fall of 2018 significantly greater than the amount owed under the Berkshire Loan Facility, the State of Vermont Department of Taxes and to the Prepetition Subordinated Obligations.[3] This equity cushion is more than sufficient to constitute adequate protection. "It is well-settled that the existence of an equity cushion can be sufficient, in and of itself, to constitute adequate protection" In re AMR Corp. 490 Bankr. 470, 478 (S.D.N.Y. 2013); *See, e.g., In re James River Assocs.*, 148 Banrk. 790, 796 (E.D. Va. 1992) In sum, the adequate protection offered by the Debtors to the prepetition secured creditors is fair, reasonable and sufficient to protect against the diminution of their collateral position. Accordingly, the Debtors respectfully submit that the use of Cash Collateral on the terms set forth in the proposed DIP Order provides Berkshire, the Vermont Department of Taxes, and the Prepetition Subordinated Obligations with adequate protection and is in the best interest of the Debtors, the Debtors' estates, their creditors and all parties in interest, and, therefore should be authorized by this Court.

## II.    Interim Approval of the DIP Financing Should Be Granted

53.     Bankruptcy Rules 4001(b)(2) and (c)(2) provide that a final hearing on a motion for authorization to obtain credit may not be commenced earlier than 14 days after service

---

[3]  A copy of the appraisal obtained by the Debtors is available on request.

of such motion. The Court, however, is authorized to conduct an expedited hearing prior to the expiration of such 14-day period and to authorize the obtaining of credit where, as here, such relief is necessary to avoid immediate and irreparable harm to a debtor's estate, pending a final hearing.

54.    The failure to obtain interim approval of the DIP Financing on an expedited basis is likely to lead to immediate and irreparable harm to the Debtors' estates because the Debtors have an immediate need for cash, and a need to quickly instill confidence in their employees, their members, prospective members, trade vendors, and service providers, that the Debtors will have access to sufficient working capital and liquidity for their operations during these Chapter 11 Cases. That confidence will help to preserve and maintain the going-concern value of the Company. Accordingly, the Debtors seek immediate entry of the Interim DIP Order to prevent immediate and irreparable harm to the Debtors' estates pending the Final Hearing pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).

## III.    Request for a Final Hearing

55.    Pursuant to Bankruptcy Rule 4001(c)(2), the Debtors request that the Court set a date for the Final Hearing as soon as practicable, and fix in the Interim DIP Order a date and time prior to the Final Hearing for parties to file objections to approval of the Motion on a final basis and entry of a Final DIP Order.

56.    No previous motion for the relief sought herein has been made to this or to any other court.

<u>Notice</u>

57.    Notice of this Motion shall be given to (i) the Office of the United States Trustee for the District of Connecticut, 150 Court Street, Suite 305, New Haven, CT 06510; (ii) Halloran & Sage, One Goodwin Square, 225 Asylum Street, Hartford, Connecticut 06103, Attn. Craig I.

Lifland, Esq., attorneys for the DIP Lender; (iii) the Internal Revenue Service, 2970 Market Street, Mail Stop 5-Q30.133, Philadelphia, PA 19104-5016; (iv) the Vermont Department of Taxes, 133 State Street, Montpelier, Vermont 05633 (v) Hinckley, Allen & Snyder LLP., 28 State Street, Boston, Massachusetts 02109, Attn: Paul F. O'Donnell III, Esq., counsel for Berkshire Bank; (vi) the holders of Prepetition Subordinated Obligations, and (vii) each of the Debtor's twenty largest unsecured creditors.  In light of the nature of the relief requested herein, the Debtors respectfully submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request entry of the Interim DIP Order, substantially in the form submitted herewith, (a) authorizing the Debtors to obtain the DIP Financing from the DIP Lender pursuant to the DIP Credit Agreement, (b) setting the Final Hearing on the Motion, and (c) granting the Debtors such other and further relief as the Court deems just and proper.

Dated: May  28, 2019
         New Haven, Connecticut

| THE DEBTOR, | THE DEBTOR, |
| HERMITAGE INN REAL ESTATE | HERMITAGE CLUB, LLC |
| HOLDING COMPANY, LLC | |

By:___/s/Douglas S. Skalka_____          By:___/s/Douglas S. Skalka_____
    Douglas S. Skalka (ct00616)                  Douglas S. Skalka (ct00616)
    NEUBERT, PEPE & MONTEITH, P.C.               NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor                195 Church Street, 13th Floor
    New Haven, Connecticut  06510                New Haven, Connecticut  06510
    Telephone 203.821.2000                       Telephone 203.821.2000
    dskalka@npmlaw.com                           dskalka@npmlaw.com

# EXHIBIT
# A



# RESTRUCTURED OPPORTUNITY INVESTORS, INC.

May 9, 2019

James Barnes
Hermitage Club LLC
Hermitage Inn Real Estate Holding Company LLC
c/o Neubert Pepe & Monteith, PC
Attn: Attorney Douglas Skalka
195 Church Street
New Haven, CT 06510

### Re: $1,750,000 DIP Revolving Credit Facility

Dear Mr. Barnes:

Restructured Opportunity Investors, Inc. or its assignee ("the Lender") is pleased to offer the following summary terms and conditions for the above referenced loan:

| | |
|---|---|
| Borrower(s): | Hermitage Inn Real Estate Holdings LLC<br>Hermitage Club LLC |
| Properties: | All Real and Personal property owned by the Borrowers |
| Loan Amount: | $1,750,000 |
| Collateral: | Primed First Mortgage position and assignment of rents on the properties listed above: UCC-1 including all membership dues/receivables. |
| Guarantor(s): | None |

11 Scovill Street – P.O. Box 2763 – Waterbury, CT 06723 – 203.573.1600   Fax: 203.753.6249





| | |
|---|---|
| Term: | Earlier of 6 months or Plan Confirmation. |
| Interest Rate: | Prime (currently 5.5%) + 5.5% per annum (currently 11%) payable monthly in arrears - floor rate |
| Amortization: | Interest only. |
| Minimum Interest: | The loan may be prepaid at any time provided the Lender has earned a minimum of twelve (12) months interest. |
| Commitment Fee: | 3.0% of the loan amount ($52,500) shall be payable at closing. |
| Exit Fee: | 3.0% of the loan amount ($52,500) will be payable upon repayment of the loan. |
| Default Rate: | The lesser of (a) 18.0% per annum or (b) the maximum rate permitted by law. |
| Taxes & Insurance: | Lender reserves the right to escrow for tax and insurance payments. Failure to pay real estate taxes and insurance premiums on a timely basis is an automatic trigger of default. |
| Interest Reserve: | At closing, Lender shall advance $280,000 out of loan proceeds to fund an Interest Reserve. Interest payment will be drawn from the Reserve monthly in arrears. |
| Brokers: | Borrower represents that no broker has introduced the Borrower to the Lender and that no brokerage fee is due and owing on the closing of this loan. |





**RESTRUCTURED OPPORTUNITY INVESTORS, INC.**

| | |
|---|---|
| Expense Deposit: | Borrower agrees to pay or reimburse the Lender and/or its affiliates, upon demand whether or not the Loan is consummated, reasonable fees and out of pocket expenses incurred by the Lender and its counsel in connection with this transaction including but not limited to attorney's fees, title insurance costs, etc. Upon execution of this term sheet, the Borrower shall deposit in the form of wire transfer or bank check an expense deposit of $50,000. This deposit shall be applied to fees and expenses incurred in verification of Borrower's representations, third party reports, attorney's fees, etc. including the partial payment of the Lender's Structuring Fee of $50,000. |

Use of Funds:

$    280,000 to fund interest reserve
$      25,000 to fund balance of Structuring Fee
$      52,500 to fund commitment fee
$      50,000 to fund loan closing costs (est)
$1,342,500 available to fund Operating
                        Expenses(approved budget)
$1,750,000

| | |
|---|---|
| Due Diligence: | Due diligence will be conducted on an expedited basis and commence immediately upon receipt of the executed term sheet and expense deposit. The Lender reserves the right to perform and order all reports deemed necessary in evaluating the Properties. These reports shall include a complete review of the financial and credit information of the Borrower(s). An Appraisal and Phase1 environmental may be deemed necessary, which would be paid for by the Borrower. If the lender is not satisfied with the results of its due diligence, at its absolute and sole discretion, it has the unconditional right to not proceed with the loan and the Borrower will be reimbursed the unspent portion of the expense deposit. |





**RESTRUCTURED OPPORTUNITY INVESTORS, INC.**

Benchmarks:

1. Hiring of Jonathan A. Joslow as Chief Restructuring Officer (CRO) and/or CEO immediately upon closing.
2. A meeting of all club membership factions within 30 days of bankruptcy filing and satisfactory conclusion of a new performing membership plan.
3. Payment of monthly interest commencing within 90 days of bankruptcy filing.
4. 120 days to file a plan and 60 days for confirmation

Please indicate Agreement to the Summary of Terms by executing a counterpart hereof in the place provided below and returning a fully executed copy to the undersigned with a wire transfer, certified or cashier's check made payable to Halloran & Sage, Trustee in the amount of $50,000.

The deposit shall be applied to fees and expenses incurred in verification of Borrower's representations, third party reports, Lender structuring fee, and the preparation of legal closing documents. In the event that the Borrower chooses not to proceed with the transaction, after receipt of the expense deposit and the executed term sheet, the unused portion of the expense deposit will be non-refundable and deemed earned as a Lender termination fee.

The Summary of Terms shall be null and void in accordance herewith unless accepted by the Lender and its Principal on or prior to May 13, 2019 at 1:00 PM and the loan has closed no later than May 24, 2019 subject to U.S. Bankruptcy Court approval.

**THIS LETTER IS AN ACKNOWLEDGEMENT BY THE LENDER OF AN APPLICATION AND REQUEST TO ENGAGE IN THE FINANCING DEFINED HEREIN MADE BY THE BORROWER. THE BORROWER UNDERSTAND AND AGREE THAT THIS LETTER DOES NOT CONSTITUTE AN AGREEMENT TO PROVIDE FINANCING, COMMITMENT, CONTRACT OR OFFER TO ENTER INTO A FINANCING AGREMEENT AND SHALL NOT BE DEEMED TO OBLIGATE THE LENDER, ITS OFFICERS, AGENTS, OR AFFILIATES IN ANY MANNER WHATSOEVER.**





ANY AND ALL TERMS ARE SUBJECT TO APPROVAL OF THE U.S. BANKRUPTCY
COURT AND ENTRY OF APPROPRIATE ORDERS BY THE U.S. BANKRUPTCY COURT
IN FORM AND SUBSTANCE SATISFACTORY TO LENDER AND LENDER COUNSEL.

Very truly yours,

RESTRUCTURED OPPORTUNITY
INVESTORS, INC.

By: _____
Keith S. Mahler
President

KSM:mlr

AGREED AND ACCEPTED BY:

HERMITAGE CLUB LLC

By: _____    Date: _____ 5/9/19 _____
James Barnes
President

HERMITAGE INN REAL ESTATE HOLDINGS LLC

By: _____    Date: _____ 5/9/19 _____
James Barnes
President